**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WINSTON DAVIS,<br>　　*Plaintiff*,<br><br>　　v.<br><br>CHARLENE SPENCER, *et al.*,<br>　　*Defendants*. | No. 3:25-cv-1391 (VAB) |

**RULING AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Mr. Winston Davis ("Plaintiff") has filed a motion for a temporary restraining order or

preliminary injunction seeking an order enjoining the Defendants from posting his former job on

all public and internal platforms, and from filling, or taking any steps to fill, that position. Mot.

for Temporary Restraining Order, ECF No. 83 ("Mot.").

For the following reasons, the motion for a temporary restraining order is **DENIED**.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

### A.　Factual Allegations

In September 2017, the Connecticut Office of the Secretary of the State hired Mr. Davis.

Proposed Third Am. Compl. 8, ECF No. 59.

In February 2024, Mr. Davis was diagnosed with hypertension, which allegedly required

ongoing treatment and monitoring. *Id.* On February 5, 2024, Mr. Davis's physician, Dr. Mark

Belsky, allegedly provided a note stating that Mr. Davis was "currently unable to work" and

would be "reevaluated in 2 weeks." *Id.* The next day, Mr. Davis allegedly disclosed his condition

to his employer and requested medical leave under the Family Medical Leave Act. *Id.*

Upon returning to work in March 2024, Mr. Davis had allegedly been removed from the payroll system and his health benefits had allegedly been terminated without notice. *Id.*

Mr. Davis alleges that the Defendants "engaged in a pattern of delay and confusion" in processing his FMLA paperwork. *Id.* at 9. The Defendants' actions allegedly resulted in incorrectly coded unauthorized absences, which Mr. Davis alleges were used to justify a written reprimand and escalating discipline against him. *Id.* Upon returning to work, Mr. Davis allegedly received his first reprimand since he began the position. *Id.*

On August 3, 2025, Mr. Davis was involved in a motor vehicle accident that allegedly caused him significant physical injuries. *Id.* at 11.

On August 29, 2025, Mr. Davis formally requested accommodations under the Americans with Disabilities Act ("ADA"), including a flexible start time and permission to attend physical therapy and medical appointments. *Id.*

On September 3, 2025, Emily Kennedy, the Director of Human Resources, allegedly denied Mr. Davis's request for schedule changes, noting it would be unduly burdensome. *Id.*

On September 4, 2025, Mr. Davis allegedly sent an e-mail to Ms. Kennedy informing her that he would be late to work due to his medical condition, to which Ms. Kennedy allegedly responded that he did not have an approved ADA accommodation permitting late arrivals. *Id.*

From September to November of 2025, Mr. Davis allegedly "continued to invoke his ADA rights" and the Defendants allegedly continued to discipline him for attendance issues. *Id.* at 11.

On October 7, 2025, Mr. Davis received notice of an eight-day suspension that was scheduled to begin the next day. *Id.* at 11-12. The same day, Mr. Davis allegedly sent Ms. Kennedy an e-mail requesting disclosure of all investigative materials and an opportunity to

respond before the suspension. *Id.* at 12. Jennifer Barahona sought guidance from the Office of Labor Relations and responded that because the collective bargaining agreement did not require disclosure of the investigative report before the issuance and serving of a suspension, the eight-day suspension would begin as scheduled. *Id.*

On December 4, 2025, Mr. Davis was allegedly placed on administrative leave and suffered a hypertensive crisis requiring emergency hospitalization. *Id.* at 14.

On February 23, 2026, Mr. Davis was terminated from his position as a material storage specialist. Mr. Davis alleges that in 2024, Ms. Kennedy unilaterally changed his FMLA year to run from March to February. *Id.* at 13. As a result, Mr. Davis alleges that the Defendants terminated him days before his FMLA year would be renewed, depriving him of twelve additional weeks of FMLA leave beginning in March 2026. *Id.* at 14.

### B.  Procedural History

On April 3, 2026, Mr. Davis file a motion for a temporary restraining order or preliminary injunction. Mot.

On April 6, 2026, the Court ordered expedited briefing on the Plaintiff's motion for a temporary restraining order. Order, ECF No. 84.

On April 17, 2026, the Defendants filed an objection to the Plaintiff's motion for a temporary restraining order. Obj., ECF No. 87.

On April 18, 2026, Mr. Davis filed a reply. Reply, ECF No. 88.

## II.    STANDARD OF REVIEW

### A.  Preliminary Injunction

Preliminary injunctive relief "is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v.*

*Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks and citation omitted). To demonstrate irreparable harm, plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations and internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983) (injunctive relief cannot be provided if claimed injury is speculative or remote).

### B. Temporary Restraining Order

In the Second Circuit, "[t]he same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015); *Local 1814 Int'l Longshoreman's Ass'n v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (standard for TRO is the same as preliminary injunction standard). Irreparable harm is the "most significant condition which must be present to support the granting of a temporary injunction." *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir. 1967) (citation omitted); *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("the moving party must first demonstrate that [irreparable] injury is likely before the other requirements for the issuance of an injunction will be considered."). As with a request for preliminary injunctive

4

relief, a party irreparable harm must be shown by the moving party to be "actual and imminent." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66.

### III.    DISCUSSION

In the Second Circuit, a single standard is used to evaluate a request for preliminary injunction and an application for temporary restraining order. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). For either type of relief, a plaintiff must demonstrate that he will suffer irreparable harm if the relief is not granted and meet "one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claim to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014)

Mr. Davis seeks an order requiring the Defendants to withdraw the posting for Plaintiff's former position from all public and internal platforms, and enjoining the Defendants from filling, or taking any steps to fill, the position. Mot. at 1. He also seeks a waiver of any security requirement under Federal Rule of Civil Procedure 65(c). *Id.* In support of his motion, Mr. Davis argues that absent injunctive relief, he will suffer irreparable harm in the form of loss of income, loss of health insurance, and inability to afford medication for his disability. *Id.* at 3-4. He also argues that he is likely to succeed on the merits of his retaliation claims, and the balance of equities tips in his favor. *Id.* at 3-5.

The Defendants make five arguments in response. First, they argue that because Mr. Davis's termination is not at issue in the Second Amended Complaint, the relief he requests in this motion is unrelated to the merits of his claims. Second, they argue that his alleged injuries are ongoing in nature and "bear no connection to whether his former position is filled or remains

vacant." Third, they argue that financial distress caused by loss of employment does not constitute irreparable harm in this Circuit. Fourth, they state that Mr. Davis is unlikely to succeed on the merits of his claims. And finally, they argue that the relief requested "would be inequitable as to Defendants and not in the public's interest, as it would require SOTS to remain without a Materials Storage Specialist until this case has been resolved."

In his reply, Mr. Davis argues that the proposed Third Amended Complaint, which is pending before this Court, explicitly alleges that his termination occurred days before his FMLA year would have been renewed, thereby making the injunctive relief in this motion related to his claims. He also argues that the evidence presented thus far would establish a prima facie case of retaliation, and that the balance of equities tips in his favor "because he faces destitution, loss of health insurance, inability to afford medication, and the imminent seizure of his tax refunds – harms that money cannot remedy."

The Court disagrees.

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). Given the importance of a showing of irreparable harm, the Court need not reach any of the other requirements if this prerequisite has not been satisfied. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)("[T]he moving party must first demonstrate that such [irreparable harm] is likely before the other requirements for the issuance of an injunction will be considered.")((citation and internal quotation marks omitted).

Absent extraordinary circumstances, in the employment context, Mr. Davis's alleged harms do not constitute irreparable harm. *See New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 326 (2d Cir.) ("Adverse employment consequences are generally not

irreparable harms"); *see also Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) ("[T]he injuries that generally attend a discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute the irreparable harm necessary to obtain a preliminary injunction"). While Mr. Davis may suffer from various medical conditions, these conditions alone do not present a "genuinely extraordinary situation" that would warrant departure from this Circuit's precedent. *Am. Postal Workers Union v. USPS*, 766 F.2d 715, 721 (2d Cir. 1985) ("[E]xcept in a 'genuinely extraordinary situation,' irreparable harm is not shown in employee discharge cases simply by a showing of financial distress or difficulties in obtaining other employment."); *see Williams v. State Univ. of New York*, 635 F. Supp. 1243 (E.D.N.Y. 1986) (describing extraordinary circumstances as, for example, where the plaintiff (1) "has very little chance of securing further employment; (2) has no personal or family resources at her disposal; (3) lacks private unemployment insurance; (4) is unable to obtain a privately financed loan; (5) is ineligible for any type of public support or relief"); *see also Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 319 (E.D.N.Y. 2022), *aff'd,* No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd,* No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) ("At their core, Plaintiffs' articulated harms associated with the instant motion for injunctive relief are: loss of employment and the resulting loss of medical benefits. As discussed in the Court's previous decision, and again below, the Second Circuit has held that these pecuniary harms are neither irreparable nor sufficient to justify the presently requested injunctive relief.").

Additionally, Mr. Davis has failed to demonstrate that his "injury is not capable of being fully remedied by money damages," *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995), thereby making emergency injunctive relief inappropriate at this stage. *Moore v. Consol.*

*Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, [ ]does not usually constitute irreparable injury . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294–95 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("It is well settled [. . . ] that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages."); *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

Mr. Davis thus has not established that he will suffer irreparable harm if the relief he seeks is not granted.

Accordingly, the Court will deny his motion for a temporary restraining order or preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, the motion for a temporary restraining order or preliminary injunction is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 23rd day of April, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

8